UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

STEVEN HAFERMANN

        Plaintiff,


v.                                                                  Case No.  14-CV-615


WISCONSIN DEPARTMENT OF CORRECTIONS
 and ROBERT HUMPHREYS

        Defendants.

---

## AMENDED COMPLAINT

---

NOW COMES the plaintiff, Steven Hafermann, by his attorneys FOX & FOX, S.C. and as and for a complaint against the defendants, Wisconsin Department Corrections and Robert Humphreys, states as follows:

### I.     JURISDICTION AND VENUE

1.     This is a civil action alleging intentional disability discrimination in violation of plaintiff's rights under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.*, the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiff also alleges a failure to provide reasonable accommodation in violation of the Rehabilitation Act.

2. This court has subject matter jurisdiction over plaintiff's federal claims under 28 U.S.C. §1331.

3. Venue is appropriates in this district under 28 U.S.C. § 1391(b)(1) in that the defendant Wisconsin Department of Corrections has its main office in this district and, thus, resides in this district.

## II. PARTIES

4. The plaintiff, Steven Hafermann, is an adult resident of the State of Wisconsin currently residing at 135 Yacoub Lane, Fond du Lac, WI 54935. Plaintiff was employed by the Wisconsin Department of Corrections from December 15, 1980 until January 2, 2011. For most of his career plaintiff worked at Kettle Moraine Correctional Institution.

5. The defendant Wisconsin Department of Corrections ("DOC") is an administrative department in the executive branch of the State of Wisconsin whose current business address is 3099 East Washington Avenue, Madison, WI 53703. The DOC is responsible for the administration of Kettle Moraine Correctional Institution. Upon information and belief the DOC is a recipient of federal financial assistance within the meaning of the Rehabilitation Act.

6. Defendant Robert Humphreys is an adult resident of the State of Wisconsin whose current business address is 3099 East Washington Avenue, Madison, WI 53703. Defendant Humphreys was at all times relevant to this complaint employed as the Warden at Kettle Moraine Correctional Institution. All actions alleged in this complaint to have been taken by defendant

Humphreys were taken under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment as the Warden. Defendant Humphreys is being sued in this matter in his individual capacity.

### III. FACTUAL ALLEGATIONS

7. Plaintiff began working for DOC as a correctional officer in 1981. He was promoted to sergeant in 1984 and to lieutenant in 1986. He was then promoted to captain, or security supervisor 2, in 1994.

8. Plaintiff was an excellent employee. He consistently met or exceeded the expectations of his position. He did not receive a single disciplinary action throughout his thirty-year career with the DOC.

9. From the time plaintiff was promoted to lieutenant in 1986 until September 2010 he was regularly scheduled to work 1st shift. He worked as a training and investigations captain, segregation and investigations captain and administrative captain, all of which were 1st shift positions. He also served as 1st shift line captain from 2003 to 2007.

10. As of September 2010 plaintiff was the most senior captain at Kettle Moraine Correctional Institution.

11. In September 2010 Deputy Warden Brian Foster told plaintiff he was being reassigned from his position as training and investigations captain to 1st shift holiday relief and that, as the "relief captain", he was being immediately reassigned to fill a vacant 3rd shift line captain position.

3

12. The 1st shift relief captain was expected to and did, in fact, fill in for other captains whenever they were absent due to scheduled vacations, sick leave, administrative leave or extended medical leave.

13. The 1st shift relief captain was expected to and did, in fact, work all three shifts i.e. 1st, 2nd and 3rd on a regular basis.

14. Plaintiff told Foster that he could not work 3rd shift because of his disability of sleep apnea. Plaintiff was diagnosed with obstructive sleep apnea with severe hypoxemia in January 2010. He also had coronary disease and a history of mitral valve repair and hypertension.

15. Plaintiff's significant obstructive sleep apnea with severe hypoxemia and related cardiac condition substantially limited his major life activities of sleeping, breathing, concentrating and working.

16. Plaintiff was an otherwise qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.

17. On or about September 17, 2010 plaintiff provided Deputy Warden Foster with a letter from his medical provider, which stated:

> "It has come to my attention that [plaintiff's] place of employment will be changing his work schedule to now include night shift work. We know that night shift work is known to be a risk factor for our patients, particularly those who have a known history of cardiac health conditions. [Plaintiff] has been treating at the Heart and Lung Center for his significant problem of obstructive sleep apnea and hypoxia during sleep . . . Our concern is that he would not be able to sleep during the day and this could jeopardize his cardiac status. Our cardiology department has also expressed concern as we know that working a night shift is detrimental to our patients health in general.

4

  We do ask that he be scheduled on shifts that do not include the night shift."

  18. Plaintiff then met with both Humphreys and Foster to discuss his request for reasonable accommodation, specifically, his request to work shifts other than 3rd shift. Plaintiff explained that he could not work 3rd shift due to his sleep apnea, as well as his cardiac condition.

  19. Humphreys, however, refused plaintiff's request for accommodation stating that if he could not work 3rd shift he would seek a medical termination.

  20. Granting plaintiff's request to be assigned to shifts other than 3rd shift would have been a reasonable accommodation; granting plaintiff's request would not have imposed an undue hardship on the operation of the defendant's business.

  21. There were other qualified security supervisors who could have been assigned to work 3rd shift instead of plaintiff including Captains Buteyn, Casey, Engebregtsen and Zank and Lieutenants Staehler and Steifvater. Plaintiff could have then performed any of their jobs, all of which he had previously successfully performed.

  22. Up until plaintiff's reassignment DOC had, in fact, scheduled other security supervisors i.e. Captain Buteyn and Lieutenant Steifvater to work 3rd shift without imposing any undue hardship on its operations. DOC could have simply continued with this method of coverage until a permanent replacement

was hired for 3rd shift.

23. Denying plaintiff's request for reasonable accommodation violated plaintiff's rights under the Rehabilitation Act and caused plaintiff substantial damages including emotional distress, physical and psychological injuries and other pecuniary and non-pecuniary losses

24. Plaintiff worked 3rd shift on September 12th and 13th and then went on a previously scheduled vacation. When he returned he took leave until October 18th. He then worked 3rd shift on October 19th and 20th, took leave again and then worked 3rd shift from October 23rd to the 25th and again on the 28th.

25. Three of the night shifts, which plaintiff worked in October, were twelve-hour shifts due to forced overtime. As the only supervising officer on duty on 3rd shift plaintiff could be and was forced to work overtime.

26. Working 3rd shift jeopardized plaintiff's health. He was extremely tired, he had difficulty concentrating and he felt very ill and had to take sick leave. He could not stay awake and fell asleep while on duty.

27. On or around late October 2010 Ryon Casey, who held the position of 1st shift line captain, was promoted to program supervisor. This created an open captain position on 1st shift.

28. Pursuant to DOC policy and practice assignments to open captain positions at Kettle Moraine Correctional Institution were typically based on seniority, so long as the captain had no job performance issues that would otherwise disqualify him or her from the position.

6

29. Plaintiff clearly satisfied these criteria. He was the most senior captain at Kettle Moraine and he had no job performance issues that would otherwise disqualify him from the open 1st shift position.

30. Plaintiff had previously worked as a 1st shift line captain and had done an excellent job. His supervisor at the time noted in his performance reviews that, "Steve has done an exemplary job as a line supervisor," and that he was "one of the best operational line supervisors [he] had worked with or supervised."

31. On or around November 1, 2010 plaintiff asked defendant Humphreys if he could be assigned to Ryon Casey's 1st shift line captain position in accordance with accepted policy and practice, but Humphreys denied the request stating, "No. We need you on nights."

32. In denying the request Humphreys intentionally discriminated against plaintiff as compared to other similarly situated non-disabled captains (or captains who did not have a known disability) who were regularly assigned to open captain positions on the basis of their seniority.

33. In denying the request Humphreys intentionally discriminated against plaintiff solely because of his membership in the class of disabled individuals and not for any legitimate state purpose.

34. Humphreys denied plaintiff's request to work the 1st shift line captain position so he would be forced to quit his employment and/or take early retirement because of his disability, which was a completely illegitimate purpose.

7

35. Plaintiff was not "needed on nights." To the contrary, there were numerous other similarly situated, non-disabled security supervisors who could have worked 3rd shift and had, in fact, been working 3rd shift whereas plaintiff could not work 3rd shift because of his disability.

36. Humphrey's refusal to allow plaintiff to work the 1st shift line captain position violated plaintiff's right to equal protection as guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983.

37. Humphrey's refusal to allow plaintiff to work the 1st shift line captain position constituted intentional disability discrimination, as well as a continuing refusal to reasonably accommodate plaintiff's disability, in violation of his rights under the Rehabilitation Act.

38. On November 17, 2010 plaintiff was admitted to the emergency room at Mercy Medical Center and diagnosed with possible TIA and depression and anxiety caused by the stress of his work situation.

39. On or about December 2010 plaintiff put in for retirement stating that he was doing so "under duress due to the Warden's decision not to place me on a different shift outside of 3rd shift, so I could control the medical issues I have at hand."

40. On or about December 2010 plaintiff began treatment with a psychiatrist and was diagnosed with major depressive disorder related to his forced retirement.

## IV.    FIRST CAUSE OF ACTION

41.    For a first cause of action against defendant DOC under the Rehabilitation Act plaintiff re-alleges and incorporates all of the preceding paragraphs as though set forth fully herein.

42.    By engaging in the conduct described above, including without limitation intentionally discriminating against plaintiff on the basis of his disability and refusing to reasonably accommodate his disability as alleged in paragraphs 11 through 40, above, the defendant DOC violated plaintiff's rights under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

43.    As a direct result of defendant DOC's unlawful conduct plaintiff has suffered and will continue to suffer damages including loss of employment opportunities, loss of reputation, loss of income and benefits, emotional distress, physical and psychological injuries and other pecuniary and non-pecuniary losses.

## V.    SECOND CAUSE OF ACTION

44.    For a second cause of action against defendant Humphreys under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 plaintiff realleges each of the preceding paragraphs as though set forth herein.

45.    By engaging in the conduct described above including without limitation intentionally discriminating against plaintiff on the basis of his disability with regard to job assignment and forced retirement as set forth in paragraphs 27 through 40, above, defendant Humphreys violated plaintiff's right

9

to equal protection as guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983.

46. As a direct result of defendant Humphrey's s unlawful conduct plaintiff has suffered and will continue to suffer substantial damages including loss of employment opportunities, loss of reputation, loss of income and benefits, emotional distress, physical and psychological injuries and other pecuniary and non-pecuniary losses.

47. Defendant Humphrey's conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights, thereby entitling plaintiff to an award of punitive damages against defendant Humphreys

WHEREFORE, plaintiff demands a trial by jury on all of his claims and relief as follows:

A. Lost income and benefits, both past and future;

B. Compensatory damages for emotional distress, physical and psychological injury and loss of reputation;

D. Punitive damages;

E. A finding of unlawful disability discrimination and violation of plaintiff's right to equal protection under the Fourteenth Amendment;

F. Reasonable attorney fees and costs, and;

G. Any other relief the Court may deem just and proper

Respectfully submitted this 8th day of December 2014:

FOX & FOX, S.C.

S/Mary E. Kennelly

_____

Mary E. Kennelly
SBN # 01019036
124 West Broadway
Monona, WI 53716
Telephone: 608/258-9588
Facsimile: 608/258-9105
E-mail: mkennelly@foxquick.com

11