IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN HAFERMANN,

                                   OPINION AND ORDER

               Plaintiff,

                                   14-cv-615-bbc

        v.

WISCONSIN DEPARTMENT OF CORRECTIONS
and ROBERT HUMPHREYS,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

From 1980 until 2011, plaintiff Steven Hafermann worked as a correctional officer at Kettle Moraine Correctional Institution.  In fall 2010, defendant Robert Humphreys (the warden of the prison), moved plaintiff to a position that required him to work third shift. Plaintiff says that he was unable to maintain that type of schedule because of his sleep apnea and heart problems and that defendants violated his rights under the Rehabilitation Act and the equal protection clause by continuing to require him to work third shift even after he submitted a letter from his health care providers and even after a first shift position for which he was qualified opened up.

Defendants have filed a motion for summary judgment on all of plaintiff's claims. Dkt. #19.  They argue that they cannot be held liable for failing to accommodate plaintiff under the Rehabilitation Act because he was not disabled within the meaning of the Act and because he failed to provide adequate medical documentation showing that any disability

he had rendered him unable to work third shift.  With respect to plaintiff's claim under the equal protection clause, defendants say that plaintiff did not adequately plead a claim of intentional discrimination.  Because I conclude that defendants have not shown that they are entitled to judgment as a matter of law on any of the issues raised in their summary judgment materials, I am denying their motion in full.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.


## UNDISPUTED FACTS

In 1980, plaintiff Steven Hafermann began working at the Kettle Moraine Correctional Institution as a correctional officer. From 1994 until 2011, plaintiff was a captain.  Defendant Robert Humphreys was the warden of the prison during the events relevant to this case.

In January 2010, plaintiff received a diagnosis of "severe obstructive sleep apnea with severe hypoxemia."  Plaintiff's sleep apnea was severe because it caused plaintiff to stop breathing during sleep more than 30 times an hour, leading him to gasp for breath and preventing him from sustaining deep sleep.  Plaintiff's hypoxemia was severe because the sleep apnea sometimes lowered his blood oxygen levels to under 80 percent.  Low oxygen levels are a concern because they can lead to a heart attack, stroke, hypertension and atrial fibrillation.  This was a special concern for plaintiff because he suffers from coronary disease and has a history of mitral valve repair and hypertension.  At the time, plaintiff did not

inform anyone at work of his conditions.

In September 2010, plaintiff was the captain for "first shift training and investigations." Defendant Humphreys changed plaintiff's position to "first shift vacation/holiday/relief," which, despite the position's title, required plaintiff to work all three shifts. At the same time, Brian Foster, the deputy warden, informed plaintiff that he was being assigned to third shifts exclusively until a replacement could be found for the third shift supervisor position. (The parties dispute the reason for these changes and the extent to which the changes were temporary, but I need not resolve the disputes because plaintiff is not challenging these decisions as discriminatory and he does not argue that the reasons for the decision are relevant to his claims.) First shift was from 6:30 a.m. to 2:30 p.m.; second shift was from 2:30 p.m. to 10:30 p.m.; and third shift was from 10:30 p.m. to 6:30 a.m.

Plaintiff told Foster that he could not work third shift because he suffered from sleep apnea. In response, Foster asked plaintiff to provide medical documentation. Plaintiff agreed to do so. In the meantime, plaintiff was required to work third shift.

On September 17, 2010, plaintiff "submitted" a letter from his nurse practioner, but the letter was "received by [the prison] on September 20 or September 21, 2010." Dfts.' PFOF ¶ 73, dkt. #34. The letter stated:

> It has come to my attention that Mr. Hafermann's place of employment will be changing his work schedule to now include night shift work. We know that night shift work is known to be a risk factor for our patients, particularly those who have a known history of cardiac health conditions. Mr. Hafermann has been treating at the Heart and Lung Center and has been our patient in pulmonology for his significant problem of obstructive sleep apnea and

3

hypoxia during sleep. He has achieved excellent treatment and is doing an excellent job with the use of his CPAP device. We are very pleased with his progress as it is protective of his cardiac condition. Our concern is that he would not be able to sleep during the day and this could jeopardize his cardiac status. Our cardiology department has also expressed concern as we know that working a night shift is detrimental to our patients health in general. We do ask that he be scheduled on shifts that do not include the night shift.

In response to this letter, Humphreys asked plaintiff for "more information." Dfts.' PFOF ¶ 78, dkt. #34. (Defendants do not say whether they told plaintiff what they believed was insufficient about the nurse practitioner's letter or what additional information they needed.) Plaintiff was assigned to work first and second shift until a scheduled vacation beginning on September 24, 2010.

On October 1, 2010, defendants sent plaintiff a questionnaire for plaintiff's health care providers to complete. The questionnaire included the following questions:

1. Does Mr. Hafermann have a physical impairment that substantially limits a major life activity?

2. Is the impairment expected to resolve in time or is it predicted to be long term and/or ongoing?

3. What are the recommended physical activity limitations?

4. Based on review of the position description and the description of the work environment [provided with the questionnaire], can Mr. Hafermann perform the essential functions of a Supervising Officer 2—Captain with or without a reasonable accommodation?

When plaintiff returned to work on October 19, 2010, he had not yet returned the questionnaire to defendants. As a result, plaintiff was assigned to work third shift again.

4

Plaintiff experienced difficulties working on third shift; he felt very tired and ill and had a hard time concentrating.

On November 1, 2010, plaintiff returned the medical questionnaire to human resources.  In response to the first question, plaintiff's health care providers wrote that plaintiff's sleep apnea made him "unable to sleep during the day" but also that he "needs time to adapt to sleeping during the day."  In response to the second question regarding the duration of plaintiff's impairment, the providers answered, "not known—possibly may adapt to sleeping during the day."  In response to the question whether plaintiff could perform his job with or without a reasonable accommodation, the providers marked both "yes" and "no."  Next to "yes," the providers wrote that "he may be able to if he has some time."  Next to "no," they wrote "needs to work day shift."  In describing the accommodation that plaintiff needed, the providers wrote, "to adjust to the new shift change."

After defendant Humphreys reviewed the answers to the questionnaire, he told plaintiff that more information was needed.  (The parties dispute exactly what Humphreys told plaintiff.  According to Humphreys, he said that the "questionnaire contained conflicting information with regard to Hafermann's ability to work third shift." Dfts.' PFOF ¶ 94, dkt. #34.  According to plaintiff, Humphreys said only that the answers were not "clear enough."  Plt.'s Resp. to Dfts.' PFOF ¶ 94, dkt. #34.  Defendants do not say whether they told plaintiff what additional information they needed.)

Also on November 1, 2010, plaintiff spoke with Humphreys about being assigned to a newly vacant first shift line captain position.  Under past practice, if there was an opening

on first shift, the most senior captain was given the opportunity to work that shift if he was capable of doing so. Plaintiff was the most senior captain and he was capable of supervising the first shift. Further, there were several other security supervisors, including four other captains, who could have been assigned to work third shift until the third shift position was filled permanently. However, Humphreys denied plaintiff's request, stating, "we need you on nights." Plaintiff told Humphreys that he was falling asleep during third shift, that working that shift was jeopardizing his health and that he was concerned about his ability to perform his job, but this did not change Humphreys' mind. Instead, Humphreys told plaintiff that he could move off third shift when a third shift captain was hired, which Humphreys said would be soon.

Lieutenant Grant Berg received the first shift line captain position instead of plaintiff. Berg was hired in 1999. To defendants' knowledge, Berg has never requested an accommodation for a disability.

Plaintiff took medical leave from November 1, 2010, to January 2, 2011, so that he could avoid working third shift. On December 2, 2010, plaintiff submitted a formal notice of retirement. He did not return to work after he was finished taking medical leave.

OPINION

A.  Failure to Accommodate

Plaintiff's first claim is that defendant Wisconsin Department of Corrections violated his rights under the Rehabilitation Act by failing to provide a reasonable accommodation for

6

his disabilities related to sleep apnea and a cardiac condition.  In particular, plaintiff says that the department should have accommodated his disability by granting his request not to work third shift.

Like the Americans with Disabilities Act, the Rehabilitation Act prohibits discrimination by covered employers against employees with a disability.  29 U.S.C. § 794(a); Garg v. Potter, 521 F.3d 731, 736 (7th Cir. 2008).  The prohibition against discrimination includes a duty to provide reasonable accommodations.  E.g., Ozlowski v. Henderson, 237 F.3d 837, 839 (7th Cir. 2001).  Although the language of the Rehabilitation Act does not include a duty to accommodate, the Supreme Court has read such a requirement into the Act.  Jaros v. Illinois Dept. of Corrections, 684 F.3d 667, 672 (7th Cir. 2012) (citing Alexander v. Choate, 469 U.S. 287, 300–01 (1985)).  More generally, under 29 U.S.C. § 794(d), the standards for determining a violation of the Americans with Disabilities Act are incorporated into the Rehabilitation Act in the employment context, so case law applying the Americans with Disabilities Act applies to the Rehabilitation Act as well.  Brumfield v. City of Chicago, 735 F.3d 619, 630 (7th Cir. 2013).

Defendants say that the department is entitled to summary judgment on plaintiff's failure to accommodate claim for two reasons.  First, defendants say that plaintiff is not an "individual with a disability" within the meaning of the Act.  Second, defendants say that, even if plaintiff has a disability, the department was not required to accommodate plaintiff because plaintiff did not provide adequate medical documentation showing that he needed the accommodation that he requested.  I will consider each of these arguments in turn.

(Defendants make numerous new arguments in their reply brief, some of which I have noted below.  I decline to consider any arguments that defendants failed to include in their opening brief.  Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").)

1.  Individual with a disability

The definition of disability under the Act includes "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  (The Act includes two other definitions as well, 42 U.S.C. 12102(1)(B)-(C), but the parties do not discuss those, so I am limiting my analysis to § 12102(1)(A).)  The statute lists various examples of major life activities, which include sleeping, breathing, concentrating and thinking.  42 U.S.C. § 12102(2)(A).  In addition, the statute defines "major life activity" as including "the operation of a major bodily function."  42 U.S.C. § 12102(2)(B).  The regulations interpreting the statute list "cardiovascular" as a "major bodily function."  29 C.F.R. § 1630.2(i)(1)(ii).

In this case, it is undisputed that plaintiff suffered from coronary disease and that plaintiff's sleep apnea can disrupt both his sleeping and breathing as many as 30 times an hour.  Defendants do not develop an argument that these undisputed facts are insufficient to allow a reasonable jury to find that plaintiff has an impairment that substantially limits a major life activity such as sleeping or breathing or a major bodily function such as plaintiff's cardiovascular system.  E.g., Feldman v. Olin Corp., 692 F.3d 748, 752 (7th Cir.

8

2012) (plaintiff adduced sufficient evidence of substantial limitation on sleeping with sleep study showing that plaintiff's "sleep efficiency (that is, the amount of time he actually slept) was rated as very poor at 48%"); Peklun v. Tierra Del Mar Condo. Association, Inc., No. 15-CIV-80801, 2015 WL 8029840, at *9 (S.D. Fla. Dec. 7, 2015) (finding that chronic sleep apnea substantially limited plaintiff's major life activity of sleeping); Cole v. Weatherford International, LLC, No. 14-CV-1115-WJM-KMT, 2015 WL 3896835, at *1 and * 4 (D. Colo. June 23, 2015) (employee who suffered from "a coronary blockage and . . . underwent a stent placement procedure" had substantial limitation on major bodily function).

Although defendants cite cases in which courts found that an individual's sleep apnea or other sleeping impairment was not sufficiently severe to qualify as a disability, defendants do not conduct any analysis of those cases or explain how they are instructive in this case. Tate v. Ancell, 551 F. App'x 877, 885 (7th Cir. 2014) (declining to consider whether plaintiff's sleep apnea was disability because plaintiff "ha[d] given [the court] no reason to question this aspect of the district court's ruling or to revisit the cases that the district court relied on"); Squibb v. Memorial Medical Center, 497 F.3d 775, 784 (7th Cir. 2007) (plaintiff's "generalized assertions" that she was "unable to sleep for substantial periods of time, unsupported by any additional evidence, medical or otherwise" not sufficient to show disability); Scheerer v. Potter, 443 F.3d 916, 920 (7th Cir. 2006) ("Scheerer's evidence on sleeping difficulties establishes, at most, intermittent disrupted sleep, but it cannot establish the type of prolonged, severe and long-term sleep difficulties that can amount to a

substantial limitation in the major life activity of sleeping.").  Because plaintiff's evidence regarding limitations on his sleeping is significantly stronger than the evidence in the cases defendants cite and at least as strong as the evidence in Feldman, I need not consider plaintiff's argument that Scheerer and Squibb are no longer good law in light of the 2008 amendments to the Americans with Disabilities Act that broadened the definition of "disability." E.g., 42 U.S.C. § 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); id. at § 12102(4)(E) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."); 29 C.F.R. § 1630.2(j)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.").  Further, defendants ignore the question whether plaintiff's coronary disease substantially limits a major bodily function, so they have forfeited that issue for the purpose of summary judgment.

Instead of discussing plaintiff's evidence of impairment, defendants argue that plaintiff's own conduct at work shows that his "sleep apnea did not interfere with his ability to work late into the night or early in the morning."  Dfts.' Br., dkt. #20, at 17.  In particular, defendants say that, in August 2010, plaintiff applied to be the prison's security director, even though that position could require third shift work.  (Plaintiff was not chosen for the security director position.)  In addition, defendants say that plaintiff volunteered to work back-to-back first and second shifts on several occasions in August and September

2010 before he requested an accommodation.

These arguments are not persuasive for two reasons.  First, defendants are conflating different statutory requirements.  To prove disability, plaintiff must show a substantial limitation on a major life activity; he does *not* have to show that he is unable to work. Brumfield, 735 F.3d at 633 (rejecting view that "reasonable accommodations are available only to individuals whose impairments substantially limit the major life activity of working").  "Working" is only one of many major life activities.  42 U.S.C. § 12102(2)(A) ("major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working").  Again, defendants fail to develop an argument that plaintiff's sleeping and cardiovascular functions are not substantially limited.   Although plaintiff cannot prevail on an accommodation claim unless he can show that he needed an accommodation to perform his job, Brumfield, 735 F.3d at 632-33, that is an issue separate from the question whether plaintiff has a disability under the Act.

Second, even if plaintiff's ability to work on third shift were dispositive of the question whether plaintiff is disabled under the Act, at most, defendants' allegations provide grounds for treating as disputed plaintiff's testimony and his medical records.  Feldman, 692 F.3d at 754 (evidence that plaintiff engaged in activities inconsistent with his allegations of disability not sufficient to show as matter of law that plaintiff was not substantially limited in major life activity).  Further, defendants' allegations do not relate to instances in which

defendant actually worked on third shift voluntarily.  Particularly because plaintiff alleges that he suffered when he did work third shifts, defendants' allegations cannot show as a matter of law that plaintiff was capable of working third shift on a regular basis.

In their reply brief, defendants seem to abandon their arguments regarding plaintiff's allegedly inconsistent conduct and they raise new arguments, though they do not develop any of them.  I  conclude that defendants forfeited these arguments, both because the arguments are not developed and because defendants failed to raise the arguments in the opening brief.  Williams v. Dieball, 724 F.3d 957, 961-63 (7th Cir. 2013);  Narducci, 572 F.3d at 324.

### 2.  Need for accommodation

Plaintiff's requested accommodation was a schedule that did not require him to work third shift.  Defendants do not argue that the accommodation was unreasonable or that it would have been difficult for them to provide such an accommodation.  Instead, they argue that plaintiff failed to show that he needed the accommodation in order to perform his job. Brumfield, 735 F.3d at 633 ("[T]o be entitled to an accommodation, a disabled employee must have a physical or mental limitation that prevents her from performing an essential function of the particular job at issue and there must be some causal connection between the major life activity that is limited and the accommodation sought.").

Plaintiff concedes that the department was permitted under the Act to require him to provide medical documentation showing that he needed an accommodation for his

12

disability.  Ekstrand v. School District of Somerset, 583 F.3d 972, 976 (7th Cir. 2009) ("[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation the employee requests.").  The dispute is whether plaintiff met that obligation, either when he submitted his first letter from his health care providers in September 2010 or when he provided answers to defendants' follow up questionnaire in November 2010.  Defendants say that neither document was sufficient, so when plaintiff refused to provide more information, he was responsible for the breakdown in the "interactive process" that the Act requires once the employee requests an accommodation.  EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005) ("The ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation. If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process.") (internal quotations and citations omitted).

Defendants argue that the September 2010 letter was inadequate because the "letter did not state that Hafermann could not work third shift, did not explain why Hafermann could not sleep during the day, why working a night-shift would be detrimental to his health or whether any of this was related to a heart condition.  The letter did not tie any adverse symptoms to plaintiff's job duties."  Dfts.' Br., dkt. #20, at 22.  These objections fall into

13

two categories: (a) the lack of a conclusion that plaintiff needed the requested accommodation; and (b) the lack of an explanation as to *why* plaintiff needed the requested accommodation for his disabilities.

The first type of objection is contradicted by the letter, which is an unambiguous request by plaintiff's health care providers that plaintiff "be scheduled on shifts that do not include the night shift" because of "his significant problem of obstructive sleep apnea and hypoxia during sleep" and "his cardiac status."  Thus, defendants had no reason to question after reviewing the letter that plaintiff's health care providers believed that plaintiff should not be working the night shift because of his disabilities.

In response to defendants' objection that the September 2010 letter did not explain clearly enough *why* plaintiff's disabilities prevented him from working third shift, plaintiff says that the letter provided a sufficient basis for the requested accommodation by stating that third shift work is a "risk factor" for patients such as plaintiff with sleep apnea and cardiac conditions and that working third shift "could jeopardize his cardiac status." However, the letter did not explain why plaintiff would be unable to sleep during the day.

Defendant's objection raises the question of the extent to which an employer is entitled under the Act to require an employee's health care providers to provide the grounds for their opinion that a patient needs an accommodation.  The cases cited by the parties do not address this point directly.

Plaintiff cites Ekstrand, 583 F.3d at 973, in which the plaintiff was a teacher who suffered from seasonal affective disorder and requested an accommodation of teaching in a

room with more natural light.  The court held that a reasonable jury could find that the employer violated its duty to provide a reasonable accommodation when it failed to provide an accommodation after receiving a doctor's note that "Mrs. Eckstrand's current episode of depression was most likely directly related to a change in her work location, to a room lacking any [exterior] windows." Id. at 976-77.  However, the defendant in Ekstrand did not argue that the note was inadequate, so the court did not consider that issue.

In addition to Ekstrand, plaintiff cites an EEOC publication for the proposition that "[a]n employer cannot ask for documentation when the individual has already provided the employer with sufficient information to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested." Plt.'s Br., dkt. #30, at 18.  However, the cited passage does not provide guidance regarding what level of detail qualifies as "sufficient."

For their part, defendants cite Spurling v. C & M Fine Pack, Inc., 739 F.3d 1055 (7th Cir. 2014), and Bultemeyer v. Fort Wayne Community School, 100 F.3d 1286 (7th Cir.1996).  In Spurling, 739 F.3d at 1059, the court held that the employer was not entitled to summary judgment on a failure to accommodate claim after it terminated the plaintiff for falling asleep at work despite a note from her doctor that the plaintiff "had a mental or physical disability covered under the ADA," that she "exhibited excessive drowsiness that affected her job performance" and that "periods of scheduled rest" were the recommended accommodation.  In ruling in favor of the plaintiff, the court faulted the employer for "not seek[ing] further clarification from either Spurling or her doctor," id. at 1061, but the court did not say what type of clarification was needed or permitted.

In Bultemeyer, 100 F.3d at 1282,1287, the court found in favor of the plaintiff on a failure to accommodate claim after the employer terminated the plaintiff even after receiving a note from his psychiatrist stating, "due to [the plaintiff's] illness [relating to bipolar disorder and schizophrenia] and his past inability to return to work, it would be in his best interest to return to a school that might be less stressful." In Spurling, 739 F.3d at 1062, the court summarized Bultemeyer as standing for the proposition that the "employer should have sought an explanation from the doctor if it had concerns with the employee's medical diagnosis."

Defendants also cite Beck v. Univeristy of Wisconsin Board of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996), for the more general proposition that an employer cannot be held liable for failing to provide an accommodation so long as the employer is acting in "good faith" and "mak[ing] reasonable efforts to help the [employee] determine what specific accommodations are necessary." However, in Beck, 75 F.3d at 1135-36, the employer provided many different accommodations for the employee. The question was not whether the employee had provided enough evidence to require an accommodation, but whether the employer's efforts to find an effective accommodation were sufficient.

Spurling and Bultemeyer support a conclusion that an employer may be entitled to clarification from the employee's medical providers under some instances, but they do not provide a standard for determining the amount or type of additional information the employer may demand from an employee before providing an accommodation, at least temporarily. Although Beck suggests a "good faith" standard, it is not clear whether Beck

16

applies to a demand by the employer to require more medical evidence.

I conclude that I need not resolve the question whether defendants were entitled to seek clarification because, even if they were, the problem with defendants' argument is that Humphreys did not *ask* for clarification. Although defendants say that Humphreys told plaintiff that he needed "more information," defendants do not say that Humphreys told plaintiff what he believed was insufficient about the September 2010 letter or what additional information was needed. The questionnaire defendants provided plaintiff also failed to address the issues discussed in defendants' brief. Rather, the questionnaire asked general questions regarding whether plaintiff is disabled. Thus, neither plaintiff nor his health care providers had notice of the additional information defendants say they needed. By failing to provide that notice, a reasonable jury could find that the department caused the breakdown in the "interactive process" required by Act to determine an appropriate accommodation for the employee. Cloe v. City of Indianapolis, 712 F.3d 1171, 1178-79 (7th Cir. 2013) ("Th[e] [interactive] process brings the employee and employer together in cooperation to identify the employee's precise limitations and discuss accommodation which might enable the employee to continue working. If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown.") (internal quotations omitted).

"[A]n employer's failure to engage in the interactive process is actionable if it prevents identification of an appropriate accommodation for a qualified individual. Accordingly, the employee must show that a reasonable accommodation could be made that would enable her

17

to carry out the essential functions of her job." Stern v. St. Anthony's Health Center, 788 F.3d 276, 292-93 (7th Cir. 2015). In this case, defendants do not deny that the department could have reasonably accommodated plaintiff by allowing him to work first or second shifts. Further, they do not allege that accommodating plaintiff would have imposed any hardship on the department. Accordingly, I conclude that defendants are not entitled to summary judgment on this claim.

Even if I assume that the department was entitled to ask for more information *and* that the department provided sufficient notice to plaintiff regarding the additional information it needed, the department still would not be entitled to summary judgment because the department refused to accommodate plaintiff even after he returned the questionnaire. Defendants argue that the answers to the questionnaire were confusing and contradictory, so the department was entitled to even more information. In particular, defendants say that the answers suggested that plaintiff might be able to adjust to working third shift.

Defendants' argument fails for two reasons. First, according to plaintiff, Humphreys did not explain what was wrong with the answers to the questionnaire or identify what additional information was needed. Rather, Humphreys said only that the answers to the questionnaire were not "clear enough." Thus, construing the facts in plaintiff's favor as I am required to do on a motion for summary judgment, a reasonable jury could find that defendants request for more information was not made in good faith.

Second, defendants do not deny that the answers to the questionnaire made it clear

18

that it was dangerous for plaintiff to work third shift at least until plaintiff could transition safely to sleeping during the day.  It is true that plaintiff's health care providers did not explain *how* plaintiff could transition safely to third shift work, but that is an argument for *giving* plaintiff an accommodation until defendants received more information from the providers, not refusing an accommodation.  Under defendants' view, an employer is entitled to deny an accommodation that is needed now if there is evidence that an employee might not need an accommodation later.  This makes no sense.  Accordingly, this is another reason for denying defendants' summary judgment motion on plaintiff's claim for failure to accommodate.

## B. <u>Disparate Treatment</u>

At some point after plaintiff was reassigned but before November 1, 2010, a first shift line captain position opened up at the prison.  Plaintiff alleges that defendants refused to give him that position because of his disabilities, in violation of both the Rehabilitation Act (with respect to the department) and the equal protection clause (with respect to defendant Humphreys).

Defendants do not deny that disparate treatment on the basis of disability is prohibited by both the Rehabilitation Act and the equal protection clause.  Instead, in their opening brief, defendants make three arguments in support of dismissal of plaintiff's disparate treatment claim: (1) the equal protection clause does not require accommodation of disabilities; (2) plaintiff did not identify in his complaint any similarly situated,

19

nondisabled employees who received more favorable treatment; (3) plaintiff conceded that Humphreys did not intentionally discriminate against him. In addition, defendants argue that plaintiff cannot sue Humphreys under the equal protection clause for conduct that also violates the Rehabilitation Act. I am not persuaded that any of these arguments require dismissal of plaintiff's disparate treatment claims. (In their opening brief, defendants did not discuss plaintiff's disparate treatment claim under the Rehabilitation Act. However, because the parties do not identify any differences between the substantive standards governing the statutory and constitutional claims, I will consider the two claims together.)

Defendants' first argument is not responsive to plaintiff's claim. For the purpose of the disparate treatment claim, plaintiff is not alleging that he was entitled to the new first shift position as an accommodation of his disability. Rather, he is alleging that defendants treated him unequally *because of* his disability by giving the position to someone else even though plaintiff was more qualified for the position. Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) (equal protection clause prohibits discrimination "'because of,' not merely 'in spite of'" particular characteristic).

Defendants' second argument shows a misunderstanding of federal pleading rules. It is well established that "[t]he plaintiff is not required [in a discrimination case] to identify similarly situated comparators at the pleading stage." Carlson v. CSX Transp., Inc., 758 F.3d 819, 830 (7th Cir. 2014). Rather, all a plaintiff has to do is allege that a particular defendant discriminated against him in a particular way because of a particular characteristic. Swanson v. Citibank, N.A., 614 F.3d 400, 405 (7th Cir. 2010). See also

Rutledge v. Illinois Dept. of Human Services, 785 F.3d 258, 259 (7th Cir. 2015) (allegation that "discharge ostensibly for neglect was actually motivated by [plaintiff's] being disabled" was sufficient at pleading stage to state claim for disability discrimination). Plaintiff complied with that minimal requirement. Am. Cpt. ¶ 32, dkt. #9 ("In denying the request [for first shift line captain position] Humphreys intentionally discriminated against plaintiff as compared to other similarly situated non-disabled captains (or captains who did not have a known disability) who were regularly assigned to open captain positions on the basis of their seniority.").

To the extent defendants mean to argue that plaintiff failed to show in his summary judgment materials that he was treated less favorably than a nondisabled employee, I disagree. It is undisputed that defendants gave the position to Grant Berg and that Berg had never requested an accommodation for a disability. This is sufficient to allow a reasonable jury to infer that defendants were not aware of any disabilities that Berg might have, at least in the absence of evidence to the contrary.

Defendants' third argument is, again, nonresponsive to plaintiff's actual claim. Defendants say that plaintiff has admitted that defendant Humphreys was not aware of plaintiff's disabilities when he reassigned plaintiff to third shift, but plaintiff is not alleging that defendants' initial reassignment decision was discriminatory. Rather, plaintiff is alleging that defendants discriminated against him by refusing to place him back on first shift after a new first shift position opened up. Because it is undisputed that Humphreys was aware of plaintiff's sleep apnea and heart condition at that point, this argument fails as well.

21

Defendants fail to develop their argument that plaintiff cannot sue Humphreys under § 1983 and the equal protection clause for conduct that is also a violation of the Rehabilitation Act.  As a substitute for argument, defendants cite <u>Levin v. Madigan</u>, 692 F.3d 607 (7th Cir. 2012), but, in that case, the court did not address the issue for which defendants cite it.  Rather, after conducting a lengthy review of legislative intent and a comparison of the scope of the rights and remedies protected under the statutory and constitutional rights, the court of appeals held that a plaintiff *could* pursue simultaneous claims under the equal protection clause and the Age Discrimination in Employment Act. <u>Id.</u> at 617-22.  Although a holding regarding the ADEA does not necessarily apply to the Rehabilitation Act, I decline to conduct an analysis under the Rehabilitation Act in the absence of any argument from defendants.

Finally, because defendants did not challenge the sufficiency of plaintiff's evidence of discrimination in their opening brief, I need not consider that issue.  <u>Sublett v. John Wiley & Sons, Inc.</u>, 463 F.3d 731, 736 (7th Cir.2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.").  Although defendants argue for the first time in their reply brief that they had nondiscriminatory reasons for denying plaintiff's request, again, that was too late.  I decline to consider this argument or any other new argument in defendants' reply brief related to plaintiff's disparate treatment claim.

22

C.  <u>Constructive Discharge</u>

A "constructive discharge" occurs when an employee is "forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." <u>EEOC v. University of Chicago Hospitals</u>, 276 F.3d 326, 331 (7th Cir. 2002). In their reply brief, defendants argue for the first time that plaintiff cannot meet that standard as a matter of law.  Because this is yet another issue that defendants ignored in their opening brief and they do not argue that plaintiff's' complaint failed to give adequate notice of this aspect of his claim, I decline to consider the issue.


ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Wisconsin Department of Corrections and Robert Humphreys, dkt. #19, is DENIED.

Entered this 15th day of January, 2016.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge